UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF IOWA

NO. 06-CR-0053-LRR

JAHMAL GREEN,

DEFENDANT/MOVANT,

RECEIVED JAN 1 1 2019

v.

UNITED STATES OF AMERICA,

PLAINTIFF/RESPONDENT

MOTION FOR RESENTENCING UNDER 18 U.S.C. 3582(c)(2)

COMES NOW the movant, Jahmal Green, proceeding pro se, and seeks a resentencing pursuant to 18 U.S.C. 3582(c)(2) and appointment of counsel relating to these proceedings pursuant to 18 U.S.C. 3006A(a)(2)(B).

I. PROCEDURAL HISTORY

The movant was charged in the United States District Court for the Northern District of Iowa with violation of 21 U.S.C. 841(a)(1), 851, and 860(a). The movant pled guilty, and was sentenced to a mandatory term of life in prison pursuant to the provisions of 21 U.S.C. 841(b)(1)(A)(if any person violates [Section] 860 after two or more convictions for felony drug offenses, that person shall be sentenced to mandatory term of life imprisonment).

On direct appeal, the movant's conviction and sentence were affirmed by the Eighth Circuit. See: United States v. Green, 256 Fed.Appx. 883 (8th Cir. 2007).

Movant subsequently sought relief pursuant to the provisions of United States Sentencing Guideline Amendment 782, which the district court denied on June 11, 2015.

No further proceedings have occurred in this case.

II. RELEVANT FACTS

The Congress of the United States passed the "First Step Act of 2018" in the previous 30 days. The law amended several provisions of the United States Code which entitle the movant to relief. As a result the movant now seeks to be resentenced.

III. ARGUMENTS

First, the First Step Act of 2018 at Sec. 401 made numerous changes to the Controlled Substances Act (21 U.S.C. 801 et seq.) including the amendment of Section 841 of Title 21 to require that the prior offenses requiring the imposition of a life term of imprisonment be 'serious drug offenses', not, minor drug offenses.

Second, the FSA authorized district courts to retroactively apply the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) for offenses committed before August 3, 2010.

Third, the Sentencing Guidelines under which movant

sought relief which was denied in 2015 originate in the Sentencing Reform Act of 1984, 98 Stat. 1987. That statute created a federal Sentencing Commission instructed to write guidelines that judges would use to determine sentences imposed upon offenders convicted of committing federal crimes. 28 U.S.C. 991, 994. Congress thereby sought to increase transparency, uniformity, and proportionality in sentencing. United States Sentencing Commission (USSC or Commission), Guidelines Manual Sec. 1A1.3, p.2 (Nov. 2011)(USSG); see 28 U.S.C. 991(b)(1), 994(f).

The Sentencing Reform Act directed the Commission to create in the Guidelines categories of offense behavior (e.g., " 'bank robbery/committed with a gun/$2500 taken' ") and offender characteristics (e.g., "one prior conviction"). USSG 1A1.2, at 1; see 28 U.S.C. 994(a)-(e). A sentencing judge determines a Guidelines range by (1) finding the applicable offense level and offender category and then (2) consulting a table that lists proportionate sentencing ranges (e.g., 18 to 24 months of imprisonment) at the intersections of rows (marking offense levels) and columns (marking offender categories). USSG ch. 5, pt. A, Sentencing Table, Sec. 5E1.2, 7B1.4; see also Sec. 1A1.4(h), at 11. The Guidelines, after telling the judge how to determine the applicable offense level and offender category, instruct the judge to apply the intersection's range in an ordinary case, but they leave the judge free to depart from that range in an unusual case. See 18 U.S.C. 3553(b); USSG 1A1.2, at 1-2, 1A1.4(b), at 6-7. The Supreme Court has held that the Guidelines are now advisory. United States v. Booker, 543 U.S. 220 (2005); see Kimbrough

v. United States, 552 U.S. 85, 91 (2007).

The Guidelines determine most drug-crime offense levels in a special way. They set forth a Drug Quantity Table that lists amounts of various drugs and associates different amounts with different "Base Offense Levels (to which a judge may add or subtract levels depending upon the "specific characteristics of the offender's behavior"). See USSG 2D1.1. The table for example associates 400 to 499 grams of powder cocaine with a base offense level of 24, a level that would mean for a first time offender a prison term of 51 to 63 months. See USSG 2D1.1(c).

In 1986, Congress enacted a more specific, drug-related sentencing statute, the Anti-Drug Abuse Act (1986 Act), 100 Stat. 3207. That statute sets forth mandatory minimum penalties of 5 and 10 years applicable to a drug offender depending primarily upon the kind and amount of drugs involved in the offense. See 21 U.S.C. 841(b)(1)(A)-(C)(2006 ed. and Supp. IV). The minimum applicable to an offender convicted of possessing with intent to distribute 500 grams or more of powder cocaine is 5 years, and for 5,000 grams or more of powder the minimum is 10 years. See 841(b)(1)(A)(ii), (B)(ii). The 1986 Act, however, treated crack cocaine crimes as far more serious. It applied its 5-years minimum to an offender convicted of possessing with intent to distribute only 5 grams of crack (as compared to 500 grams of powder) and its 10-year minimum to one convicted of possessing with intent to distribute only 50 grams of crack (as opposed to 5,000 grams of powder), thus producing a 100-to-1 crack-to-powder ratio. See 841(b)(1)(A)(iii), (B)(iii)(2006 ed.).

The 1986 Act, like other federal sentencing statutes, interacts with the Guidelines in an important way. Like other sentencing statutes, it trumps the Guidelines. Thus, ordinarily no matter what the Guidelines provide, a judge cannot sentence an offender to a sentence beyond the maximum contained in the federal statute setting forth the crime of conviction. Similarly, ordinarily no matter what range the Guidelines set forth, a sentencing judge must sentence an offender to at least the minimum prison term set forth in a statutory mandatory minimum. See 28 U.S.C. 994(a), (b)(1); USSG 5G1.1; Neal v. United States, 516 U.S. 284, 289-295 (1996).

Not surprisingly, the Sentencing Commission incorporated the 1986 Act's mandatory minimums into the first version of the Guidelines themselves. Kimbrough, supra, at 96-97. It did so by setting a base offense level for the first-time drug offender that corresponded to the lowest Guidelines range above the applicable mandatory minimum. USSC, Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 53-54 (Oct. 2011)(2011 Report). Thus, the first Guidelines Drug Quantity Table associated 500 grams of powder cocaine with an associated 500 grams of powder cocaine with an offense level of 26, which for a first-time offender meant a sentencing range of 63 to 78 months (just above the 5-year minimum), and it associated 5,000 grams of powder cocaine with an offense level of 32, which for a first-time offender meant a sentencing range of 121 to 151 months (just above the 10-year minimum). USSG 2D1.1 (Oct. 1987). Further reflecting the 1986 Drug Act's 100 to 1 crack-to-

powder ration, the Table associated an offense level of 26 with 5 grams of crack and an offense level of 32 with 50 grams of crack. Ibid.

In addition, the drug quantity Table set offense levels for small drug amounts that did not trigger the 1986 Drug Act's mandatory minimums so that the resulting Guidelines sentencing would remain proportionate to the sentences for amounts that did trigger these minimums. 2011 Report 54. Thus, the Table associated 400 grams of powder cocaine (an amount that fell just below the amount triggering the 1986 Drug Act's 5 year minimum) with an offense level of 24, which for a first-time offender meant a sentencing range of 51 to 63 months (the range just below the 5-year minimum). USSG 2D1.1 (Oct. 1987). Following the 100-to-1 crack-to-powder ratio, the table associated four grams of crack (an amount that also fell just below the amount triggering the Drug Act's 5 year minimum) with an offense level of 24. Ibid.

The Commission did this not because it necessarily thought that those levels were most in keeping with past sentencing practice or would independently have reflected a fair set of sentences, but rather because the Commission believed that doing so was the best way to keep similar drug-trafficking sentences proportional, thereby satisfying the Sentencing Reform Act's basic "proportionality objective" See Kimbrough, 552 U.S. at 97; USSG 1A1.3 (Nov. 2011); 2011 Report 53-54, 349, and n. 845. For this reason, the Commission derived the Drug Quantity Table's entire set of crack and powder cocaine offense levels by using the 1986 Drug Act's two (5 and 10 year) minimum amounts as reference points and then

extrapolating from those two amounts upward and downward to set proportional offense levels for other drug amounts. Ibid.

During the next two decades, the Commission and others in the law enforcement community strongly criticized Congress' decision to set the crack-to-powder mandatory minimum ratio at 100-to-1. The Commission issued four separate reports telling Congress that the ratio was too high and unjustified because, for example, research showed the relative harm between crack and powder cocaine less severe than 100-to-1, because sentences embodying that ratio could not achieve the Sentencing Reform Act's "uniformity goal of treating the offenders alike, because they could not achieve the "proportionality goal of treating different offenders (e.g., major drug traffickers and low-level dealers) differently, and because the public had come to understand that sentences embodying the 100-to-1 ratio as reflecting unjustified race-based differences. Kimbrough, supra, at 97-98; USSC Special Report to the Congress: Cocaine and Federal Sentencing Policy 197-198 (Feb. 1995)(1995 Report); USSC Special Report to the Congress: Cocaine and Federal Sentencing Policy 8 (Apr. 1997)(1997 Report); USSC Special Report to the Congress: Cocaine and Federal Sentencing Policy 91, 103 (May 2002)(2002 Report); USSC Report to Congress: Cocaine and Federal Sentencing Policy 8 (May 2007)(2007 Report); The Commission also asked Congress for new legislation embodying a lower crack to powder ratio. 1995 Report 198-200; 1997 Report 9-10; 2002 Report 103-107; 2007 Report 6-9. And the Commission recommended that the legislation "include an emergency amendment allowing the commission to incorporate the statutory

changes in the guidelines while minimizing the lag between any statutory and guideline modifications for cocaine offenders." Id. at 9.

In 2010, Congress accepted the Commissions recommendations, see 2002 report 104; 2007 Report 8-9, and n.26, and enacted the Fair Sentencing Act into law. The Act increased the drug amounts triggering mandatory minimums for crack trafficking offenses. The change had the effect of lowering the 100-to-1 crack-to-powder ratio to 18-to-1. (The FSA also eliminated the 5-year mandatory minimum for simple possession of crack. 124 Stat. 2372.).

Further, the FSA instructed the Commission to "make such conforming amendments to the Federal sentencing guidelines as the commission determines necessary to achieve consistency with other guidelines provisions and applicable law." id. at 2374. And it directed the commission to "promulgate the guidelines, policy statements, or amendments provided for in this Act as soon as practicable, and in any event not later than 90 days after the new Act took effect. Ibid.

The FSA took effect on August 3, 2010. The Commission promulgated conforming emergency guidelines amendments that became effective on Nov. 1, 2010. 75 Fed. Reg. 66188 (2010). A permanent version of those guidelines amendments took effect on November 1, 2011. See 76 id., at 24960 (2011).

Here, the movant was charged in 2006 before the FSA took effect. Under the 1986 Drug Act, an offender like movant with prior drug felonies who sold crack was subject to a mandatory term of life imprisonment. In denying movant's claim

for relief under his original 3582(c)(2) motion the district court cited the mandatory minimum sentence imposed as the ground upon which it would not amend or reduce the sentence. Given the retroactive application of the First Step Act to the FSA as well as the amendment of the mandatory life imprisonment definition (between 'felony drug offense' and 'serious drug' offense) it appears that the movant is entitled to resentencing.

The statutory change is important, because under the Fair Sentencing Act movant is entitled to its retroactive application. And because that retroactive application entitled the movant to resentencing, now, the court should apply the Guidelines and statutory penalties in effect, now, because the district court should use the Guidelines in effect at the time of sentencing. See, USSG 1B1.11 (court generally should use Guidelines in effect on the date of sentencing); United States v. Davis, 276 Fed. Appx. 527 (8th Cir. 2008)(citing United States v. Ingram, 501 F.3d 963, 968 (8th Cir. 2007)(district court's application of Guidelines reviewed de novo). The Guidelines in effect at this time, until they are amended following recent passage of the First Step Act of 2018, would not require the imposition of the sentence previously imposed. Similarly, because the Guidelines in effect at this time and the change in the statutory mandatory minimum the movant is entitled to relief under 3582(c)(2) as well as 28 USC 2255.

Finally, because this is an issue of first impression following the passage of the First Step Act of 2018 the court should appoint counsel for proper briefing because the court should have, on this issue, the full benefit of adversarial

testing that only counsel may provide. See: 18 U.S.C. 3006A(a)(2)(B); also: Green v. United States, 262 F.3d 715 (8th Cir. 2001).

CONCLUSION

WHEREFORE for each of the aforegoing reasons the movant requests (1) appointment of counsel, (2) resentencing, (3) reduction in the term of imprisonment presently imposed.

*/s/ Jahmal Green*

Jahman Green

USP Tucson

Po Box 24550

Tucson AZ 85734

Movant - pro se

CERTIFICATE OF SERVICE

I certify that a copy of this motion was served upon the United States Attorney for the Northern District of Iowa via United States Mail.

*/s/ Jahmal Green*

Jahmal Green

Jahmal Green 09794-029
Post Office Box 24550
Penitentiary Tucson United
Tucson, AZ 85734-4550
States

No date
g.u.



⇔09794-029⇔
Us Court Clerk
111 7TH AVE SE
Box 12
Cedar Rapids, IA 52401-2101
United States

LEGAL
MAIL